Chetan S. Patil (SBN 310527)
PATIL LAW, PC
7119 W. Sunset Blvd., Suite 683
Los Angeles, CA 90046
(800) 950-6553
cp@patillaw.com

*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### Western Division

| | |
|---|---|
| LORRAINE J. VANDER ARK, as Trustee of the LORRAINE J. VANDER ARK TRUST, and derivatively on behalf of HAF CORPORATION,<br><br>*Plaintiffs*,<br><br>*vs*.<br><br>HAF CORPORATION, a Wyoming corporation, HAF INDUSTRIES, a Wyoming corporation, HOWARD A. FOOTE, MICHAEL IORLANO, SHERRI DEBOER, L. JANE HANSEN, SAMIA ANWAR EL BAROUDY, PAUL GRAVEN, ROCKY S. MACDONALD, BRAD REINARD, JOEY OOSTING, MICHAEL JOHNSON, WILLIAM MUSGRAVE, VENABLE, LLP, a Maryland limited liability partnership, CHRISTOPHER H. DIETERICH, and DIETERICH & ASSOCIATES, LLP, a limited liability partnership,<br><br>*Defendants*. | Case No. _____<br><br>**COMPLAINT FOR DAMAGES AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**<br><br>*EX PARTE* TEMPORARY RESTRAINING ORDER REQUESTED |

Lorraine J. Vander Ark, in her capacity as Trustee of the Lorraine J. Vander Ark Trust u/a/d March 29, 2011 ("**Plaintiff**"), and derivatively on behalf of HAF Corporation as to Count XIII – Creditor Derivative Claim, brings this complaint seeking preliminary and permanent injunctive relief, money damages, and other relief against Defendants HAF Corporation, HAF Industries, Howard A. Foote, Michael Iorlano, Sherri DeBoer, Samia Anwar El Baroudy, L. Jane Hansen, Paul Graven, Rocky S. MacDonald, Brad Reinard, Joey Oosting, Michael Johnson, William Musgrave, Venable, LLP, and Christopher H. Dietrich and Dieterich & Associates, a California entity. Plaintiff alleges as follows for her complaint:

## PARTIES, BACKGROUND, JURISDICTION, AND VENUE

1.      Plaintiff invokes the Court's jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal-question jurisdiction), 28 U.S.C. § 1332 (diversity jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction).

2.      Lorraine J. Vander Ark is domiciled in Florida.

3.      The Lorraine J. Vander Ark Trust u/a/d March 29, 2011 (the "**Trust**") has its situs in Florida.

4.      At all relevant times, Lorraine J. Vander Ark's husband, Duane Vander Ark ("**Vander Ark**"), acted as Plaintiff's agent.

5.      The Vander Arks reside together in Englewood, Florida.

6.      Defendant HAF Corporation is incorporated in Wyoming and has its principal place of business in Newport Beach, California.

7.      Defendant HAF Industries is incorporated in Wyoming and has its principal place of business in Newport Beach, California.

8.      Defendant Howard A. Foote ("**Foote**") is domiciled in California.

9.      At all times relevant to the claims against him, Foote has been the Chairman of HAF Corporation's Board of Directors, as well as the company's President and Chief Executive Officer.

10.     At all times relevant to the claims against him, Foote has been the sole owner and a Director of HAF Industries.

11.     Defendant Michael Iorlano ("**Iorlano**") is domiciled in California.

12.     At all times relevant to the claims against him, Iorlano was a Director of HAF Corporation and the Executive Vice President of Business Development at the company.

13.     Defendant Sherri DeBoer ("**DeBoer**") is domiciled in California.

14.     At all times relevant to the securities law claims against her, DeBoer was the Executive Manager of HAF Corporation.

15.     At all times relevant to the claims against her for breach of fiduciary duties, DeBoer has been the Executive Manager of HAF Corporation and a company Director.

16.     Defendant L. Jane Hansen ("**Hansen**") is domiciled in California.

17.     At all times relevant to the claims against her, Hansen held a position at HAF Corporation whereby she was responsible for the company's financial health and was required to provide program management oversight.

18.     Defendant Paul Graven ("**Graven**") is domiciled in California.

19.     At all times relevant to the claims against him, Graven was the head of HAF Corporation's marketing, business development, R&D, and corporate strategy.

20.     Defendant Samia Anwar El Baroudy ("**El Baroudy**") is domiciled in Washington DC.

21.     At all times relevant to the securities law claims against her, El Baroudy was HAF Corporation's Director of Finance.

22.     At all times relevant to the claims against her for breach of fiduciary duties, El Baroudy has been HAF Corporation's Chief Financial Officer and a company Director.

23.     Defendant Rocky S. MacDonald ("**MacDonald**") is domiciled in California.

24.     At all times relevant to the claims against him, MacDonald has been HAF Corporation's Director of Production and a Special Advisor to the Chairman.

25.      Defendant William Musgrave ("**Musgrave**") is domiciled in California.

26.     At all times relevant to the claims against him, Musgrave has been a Director of HAF Corporation.

27.     Defendant Brad Reinard ("**Reinard**") is domiciled in California.

28.     At all times relevant to the claims against him, Reinard has been a Director of HAF Corporation.

29.     Defendant Joey Oosting ("**Oosting**") is domiciled in California.

30.     At all times relevant to the claims against him, Oosting has been a Director of HAF Corporation.

31.     Defendant Michael Johnson ("**Johnson**") is domiciled in Colorado.

32.     At all times relevant to the claims against him, Johnson has been HAF Corporation's Chief Operating Officer.

33.     Defendant Venable, LLP ("**Venable**") is a Maryland limited liability partnership with its principal place of business in Washington D.C., and with offices in Los Angeles, California.

34.     Christopher H. Dieterich is domiciled in California.

35.     Christopher H. Dieterich is the founder and managing attorney at Dieterich & Associates, a law firm that has its principal place of business in Los Angeles, California.

36.     At all times relevant to the claims against them, Christopher H. Dieterich and Dieterich & Associates, LLP (collectively "**Dieterich**") were corporate counsel for HAF Corporation.

37.     The Court has diversity subject-matter jurisdiction under 28 U.S.C. § 1332 because (a) the Trust is a "citizen" of Florida and none of the Defendants are "citizens" of Florida, and (b) as to each Defendant, the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

38.     The Court has federal-question subject-matter jurisdiction under 28 U.S.C. § 1331 with respect to Plaintiff's private causes of action under Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5.

COMPLAINT FOR DAMAGES AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

39.     The Court has supplemental subject-matter jurisdiction under 28 U.S.C. § 1367 with respect to Plaintiff's state-law claims because they are so related to Plaintiff's claims under the Securities Exchange Act of 1934 and SEC Rule 10b-5 that they form part of the same case or controversy.

40.     The Court has personal jurisdiction over HAF Corporation, HAF Industries, Foote, Iorlano, DeBoer, and Venable pursuant to Section 27 of the Securities Exchange Act of 1934 as they are domiciled in the United States and the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.

41.     The Court has personal jurisdiction over all Defendants because, as detailed *infra*, each Defendant is either (a) domiciled in California, (b) has its principal place of business in California, or (c) faces claims that arise out of the Defendant's contacts with California, which are qualitatively sufficient for the Court to exercise personal jurisdiction over the Defendant without offending traditional notions of fair play and substantial justice.

42.     A substantial part of the events and omissions giving rise to the claims occurred in Orange County, California.

**GENERAL ALLEGATIONS**

43.     In May 2022, Levi Wosick, a HAF Corporation representative, contacted Vander Ark by telephone regarding an opportunity to invest in HAF Corporation.

44.     Mr. Wosick referred Vander Ark to Iorlano for additional information about HAF Corporation's investment offering.

45.     Shortly after the referral, Iorlano and Foote solicited Vander Ark over the telephone to purchase a convertible promissory note from HAF Corporation.

46.     During their respective sales pitches, Iorlano and Foote generally described HAF Corporation as an early-stage company engaged in the development of a "green" hydrogen power generator for use in a variety of commercial, industrial, and consumer applications.

47.     After listening to the sales pitches, Vander Ark requested investment offering documents from HAF Corporation.

48.     Later in May 2022, HAF Corporation mailed investment offering documents to the Vander Arks' residence, including a "Private Offering Memorandum" dated April 5, 2022 ("POM"); a "Subscription Agreement"; and, a "Convertible Note Document."

49.     Vander Ark shared the opportunity to invest in HAF Corporation, and the investment offering documents, with Plaintiff.

50.     The POM contains the following material representations, among others:

a.     "HAF Corporation has been formed to develop, improve, patent, and license the Hydrogen On Board Generator technology, (HBOX) pioneered by Howard Foote."

b.     "HAF Corporation, (the 'Company') has been formed to be the holding company for a vast series of patents and other intellectual property, surrounding the usage of hydrogen as a fuel, and the creation of that hydrogen fuel resource by means

COMPLAINT FOR DAMAGES AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

of conversion or generator technology held by the Company (referred to in this document as NEO – New Energy Origin technology).”

     c.    In reference to HAF Corporation, “[t]he Company controls the rights to IP for the purpose of producing on-demand **GREEN** energy and replacing fossil fuels while reducing dependence on the over burdened electrical grids.”

     d.    In reference to HAF Corporation, “[f]or the last two decades, HAF has spent millions of dollars developing IP focusing on propulsion, alternative energy power production and control systems to manage that power.”

     e.    “The Company intends to go Public and has acquired all the Intellectual Property assets from HAF Industries for $5.5M shares of Common Stock. *This IP has been developed over the course of two decades and is substantial and once audited, will be added to the Balance Sheet*.”

     f.    In reference to HAF Corporation, “[t]he crown jewel in HAF’s book of assets is the IP on NEO, the Hydrogen On Board Generator, the ‘HBOX.’”

     g.    In reference to HAF Corporation, “[o]ur patent attorneys, Venable LLP, (www.venable.com) are under contract and filing several additional patents protecting and securing our technology related to the HBOX, our Mg reconstitution process and trademarks for our branding programs.”

     h.    In reference to HAF Corporation, “HAF purposefully only patented a few key processes to protect the technology until Mr. Foote was ready to bring the program to a development/production phase. This strategy was employed to protect

release of technical information maximizing the time the company will have to exploit their competitive advantage over the market without others trying to copy the process."

      i.    In reference to HAF Corporation, "HAF intends to operate as a technology outsourcing company and receive Licensing and Royalty Fees from a broad range of products and applications in different markets. We expect to initially install our technology through licensing agreements, as portable power generators and as back-up power in residential homes and commercial offices."

      j.    In reference to HAF Corporation, "HAF will generate Revenues from four separate sources: 1. One time Licensing Rights to build and sell the patented Hydrogen Generator . . . 2. On-going Royalties on each unit produced and sold . . . ."

      k.    "The minimum offering amount will be used to secure early round patent filings through already-engaged patent counsel."

      l.    "Use of Proceeds: . . . Round B Funding $5 million . . . Next Monies in: 1. $200,000 will be used to complete the filings of additional patents covering all of the technology management believes prudent to disclose and protect . . . ."

      m.    In reference to HAF Corporation, "[t]he company will provide annual financial statements and periodic reports to investors."

51. A letter signed by patent attorney Donald H. Heckenberg ("**Heckenberg**") of Venable dated December 21, 2021 was incorporated into the POM and includes the following material representations:

      a.    "Re:   HAF Industries' and HAF Corporation's Intellectual Property."

b.     "I have also been informed that HAF Industries and HAF Corporation are developing new designs for more cost effective fuel cells to be used with the magnesium reactors."

52.    On May 24, 2022, Foote sent Vander Ark a letter on behalf of HAF Corporation addressing certain questions Vander Ark had raised regarding HAF Corporation and the investment offering documents.

53.    In the May 24, 2022 letter, Foote made the following material representation: "I am filing many additional patents at this time, and we have been actively doing that for the last 12 months."

54.    On May 25, 2022, Plaintiff subscribed to purchase a $4 million convertible note from HAF Corporation for the Trust by executing and returning the Subscription Agreement.

55.    Later on May 25, 2022, Plaintiff caused $4 million to be wired to HAF Corporation's attorneys in California in accordance with instructions provided in the Subscription Agreement.

56.    On or about June 30, 2022, Plaintiff and Foote, on behalf of HAF Corporation, executed the Convertible Note Document, whereby HAF Corporation issued a "6% CONVERTIBLE NOTE DUE APRIL 5, 2025" to the Trust (the "**Note**").  (**Exhibit A**, Note).

57.     After investing $4 million of the Trust's funds in HAF Corporation, Plaintiff discovered that the representations quoted *supra* in the POM, the Venable letter, and Foote's May 24, 2022 letter are in fact false.

58.     Plaintiff received a February 10, 2023 letter from Venable that discussed the HBOX technology and was similar in form to Venable's December 21, 2021 letter that was incorporated into the POM; however, the subject line of the February 10, 2023 letter was "HAF Industries' Intellectual Property," and the body of the letter made no reference to HAF Corporation.

59.     In a March 2023 Zoom call between Vander Ark, Foote, DeBoer, and Heckenberg, it was confirmed that HAF Corporation has no existing, pending, or prospective patents, and that Foote only caused Venable to be engaged as patent counsel for HAF Industries, not for HAF Corporation.

60.     Foote sent letters to Vander Ark on March 31, 2023 and April 3, 2023 in which he admitted that HAF Industries is the sole owner of the HBOX and related intellectual property.

61.     In the April 3, 2023 letter, Foote announced that it was his "intention" to have HAF Industries grant certain rights to use the HBOX and related intellectual property to HAF Corporation under a licensing agreement in exchange for a licensing fee.

62.     In the April 3, 2023 letter, Foote asserted that he had acted in the Trust's best interests by not "pull[ing] the trigger" earlier on a licensing agreement between HAF

Industries and HAF Corporation because doing so would have started the "debt clock for HAF Corp."

63.    Foote's letters ignore the fact that Plaintiff was induced to invest the Trust's funds in HAF Corporation based on representations in the POM that HAF Corporation already owned the HBOX and related intellectual property.

64.    Prior to the investment at issue, HAF Corporation and its Directors and Officers made no mention to the Vander Arks, in the offering documents or otherwise, of any current or prospective licensing arrangement between HAF Industries and HAF Corporation.

65.    The proceeds of the investment offering at issue are not being used in the manner that the POM represented the funds would be used.

66.    HAF Corporation has already spent most of the offering proceeds and at least some of the funds have been misappropriated by Foote through transfers to or for the benefit of HAF Industries without any corresponding consideration going to HAF Corporation.

67.    Vander Ark was recently informed by MacDonald that HAF Corporation has been shredding documents and fabricating a paper trail to support a false narrative regarding how the company has been managed and has deployed its capital.

68.    Of particular concern, MacDonald revealed that discussions have taken place at HAF Corporation about how to "fix the books" to obscure financial and operational

irregularities relating to, *inter alia*, payments made to Foote using funding that was earmarked to complete the filings of additional patents to secure patent protection.

69.     HAF Corporation has not provided Plaintiff with its annual financial statements for 2022, after repeatedly promising to do so and then missing its own self-imposed deadlines.

70.     Nor has HAF Corporation provided Plaintiff with any other management or financial reports, despite repeated requests for such documents.

71.     Since October 2022, HAF Corporation has failed and refused to provide Iorlano with requested financial and operations information, thus preventing him from complying with his oversight obligations as a Director of the company.

72.     In response to Iorlano's expressed concerns about financial and operational irregularities at the company, Foote has attempted to remove Iorlano from HAF Corporation's Board of Directors.

73.     Since Plaintiff made her $4 million investment in HAF Corporation in May 2022 as part of HAF Corporation's $5 million Round B offering, HAF Corporation has transferred at least $4 million of the "Round B" offering proceeds to pay employees and vendors of goods and services to develop the HBOX and related intellectual property *for HAF Industries*, and to pay attorneys to protect said intellectual property for *HAF Industries* (hereinafter the "**Transfers**").

74.     Some of the Transfers have gone to Venable in the form of legal fees to pay for legal work done to protect HAF Industries' intellectual property.

75.     Some of the Transfers have gone to HAF Corporation officers and employees in the form of salary or other compensation for work done to develop and protect intellectual property for HAF Industries, not HAF Corporation, including but not limited to Foote, DeBoer, and MacDonald.

76.     HAF Industries, and the HAF Corporation officers and employees who received some of the Transfers, are insiders of HAF Corporation.

77.     HAF Corporation made the Transfers knowing that the funds were provided by Plaintiff with the expectation and understanding that the funds would be used to develop and protect HAF Corporation intellectual property.

78.     HAF Corporation concealed from Plaintiff that it was transferring the Round B offering proceeds for the benefit of HAF Industries, rather than HAF Corporation.

79.     HAF Corporation has continued to make Transfers since Plaintiff threatened to sue the company.

80.     The Transfers in the aggregate have caused almost all of HAF Corporation's assets to be transferred to favored insiders and creditors, to the detriment of the company's other creditors.

81.     HAF Corporation has actively attempted to conceal its wrongdoing by failing to produce financial reports, despite promising to do so, and by responding to inquiries by Vander Ark by forcing its employees to sign confidentiality agreements that prevent them from speaking to Plaintiff or Vander Ark about material aspects of the business and the company's expenditures.

COMPLAINT FOR DAMAGES AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

82.    According to the investment offering documents, HAF Corporation's "Round B" investment offering was designed to be exempt from the Securities Act registration requirement under Section 4(a)(2) of said Act and to satisfy the safe-harbor requirements of Rule 506(b) of SEC Regulation D; however, upon information and belief, the "Round B" offering did not satisfy the safe-harbor requirements and HAF Corporation failed to file "Form D" in the required jurisdictions.

## COUNT I – BREACH OF CONTRACT
## (AGAINST HAF CORPORATION)

83.    Plaintiff incorporates the prior and ensuing allegations as if set forth in their entirety herein.

84.    The Note is a contract between Plaintiff and HAF Corporation formed by mutual assent of the parties and supported by consideration.

85.    Plaintiff has fully performed under the contract.

86.    Section 1 of the Note states "[t]he funds due to the Company under this Note shall be deposited into an account at HAF [Corporation] or into a HAF [Corporation] escrow account."

87.    In Section 9 of the Note, HAF Corporation covenanted to do, in pertinent part, all of the following:

(a) Give prompt written notice to the Holder of any Event of Default as defined in this Note or of any matter that has resulted in, or could

reasonably be expected to result in a materially adverse change in its
financial condition or operations.

(b) Give prompt written notice to the Holder of any claim, action, or
proceeding which, in the event of any unfavorable outcome, would or
could reasonably be expected to have, a materially adverse effect on the
financial condition of the Company.

88.     Section 8 of the Note identifies several "Events of Default," the occurrence
of any of which causes the Note to become "immediately due and payable without
presentment, demand, protest, or notice of any kind."

89.     Section 8 of the Note states that an Event of Default occurs when *inter alia*

(b) Any of the representations or warranties made by the Company herein,
in the documents delivered to the Holder (the "Subscription Agreement"),
or in any certificate or financial or other statements heretofore or hereafter
furnished by or on behalf of the Company in connection with the execution
and delivery of this Note or the Subscription Agreement shall be false or
misleading in any material respect at any time.

(c) The company shall fail to perform or observe any other covenant, term,
provision, condition, agreement, or obligation of the Company under this
Note, and such failure shall continue uncured for a period of seven (7) days
after notice from the Holder of such failure.

90.     Upon information (provided by Iorlano) and belief, the Trust's $4 million
investment was not deposited into a HAF Corporation account or escrow account, as HAF

COMPLAINT FOR DAMAGES AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

Corporation represented it would be, but was instead delivered to an account belonging to HAF Industries.

91. HAF Corporation's representation that the Trust's investment would be deposited into a HAF Corporation account or escrow account was material, false, and misleading, and therefore constitutes an Event of Default under Section 8(b) of the Note.

92. HAF Corporation's representation in the POM that it would provide annual financial statements and periodic reports to investors was material, false, and misleading, and therefore constitutes an Event of Default under Section 8(b) of the Note.

93. HAF Corporation's representations in the POM that it owned and controlled the HBOX and related intellectual property were material, false, and misleading, and therefore constitute Events of Default under Section 8(b) of the Note.

94. HAF Corporation's representations in the POM regarding how the investment offering proceeds would be spent, including that the first $200,000 would be used to procure patents for HAF Corporation, were material, false, and misleading, and therefore constitute Events of Default under Section 8(b) of the Note.

95. HAF Corporation's representations in the POM, and in Foote's May 24, 2022 letter, that the company had already engaged patent counsel, who had been working on "additional" patents for 12 months, were material, false, and misleading, and therefore constitute Events of Default under Section 8(b) of the Note.

96. HAF Corporation has breached the covenants set forth in Sections 9(b) and (c) of the Note by failing to promptly notify Plaintiff of HAF Industries' claim of

COMPLAINT FOR DAMAGES AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

ownership to the HBOX intellectual property, and of the truth regarding the other matters that it misrepresented in the offering documents, and those breaches constitute Events of Default under Section 8(c) of the Note.

97. HAF Corporation had an obligation under the Note covenants to promptly notify Plaintiff of HAF Industries' claim to the HBOX intellectual property, and of the other matters referenced in the preceding paragraph, because (a) in the event of any unfavorable outcome, the matters could have, or could reasonably be expected to have, a materially adverse effect on the financial condition of HAF Corporation; and/or (b) the matters have resulted in, or could reasonably be expected to result in, a materially adverse change in HAF Corporation's financial condition or operations.

98. The breaches of the Section 9 covenants constitute Events of Default under Section 8(c) of the Note because HAF Corporation's failure to give prompt notice of the matters at issue cannot be cured now that approximately a year has already passed since the disclosures should have been made.

99. HAF Corporation is in breach of the Note because all of the Note principal and accrued interest is immediately due and payable as a result of the aforementioned Events of Default, but HAF Corporation has failed to remit payment of the same to Plaintiff.

100. HAF Corporation's breach of the Note has caused damage to Plaintiff, who is contractually entitled under the Note to recover the Trust's principal investment of $4

million, interest at 6% per year from the date of the investment, and attorney fees and costs incurred to bring this action and collect on the Note.

101.   As a direct and proximate result of the breach of contract and the transfer of assets to, and for the benefit of, HAF Industries, Plaintiff has been damaged.

102.   Unless the Court immediately enjoins HAF Corporation from dissipating, secreting, depreciating, and otherwise using its assets contrary to the representations in the POM, Plaintiff will suffer irreparable harm because she will not be able to recover the debt owed to her from HAF Corporation.

103.   The harm that Plaintiff will suffer if the Court does not grant the preliminary and permanent injunctive relief Plaintiff seeks outweighs any harm that the affected Defendants and any other third parties might suffer if the injunctive relief is granted.

104.   The public interest would be advanced if Plaintiff is granted the preliminary and permanent injunctive relief it seeks.

WHEREFORE, Plaintiff respectfully requests (a) temporary, preliminary, and permanent injunctive relief prohibiting HAF Corporation from transferring any of their assets; (b) a money judgment in her favor and against HAF Corporation in an amount that includes Plaintiff's $4 million principal investment, interest at 6% per year from the date of the investment, and attorney fees and costs incurred to bring this action and collect on the Note, or in the alternative, the equitable remedy of rescission and restitution, and an equitable accounting of how her funds have been disposed of and used, and of HAF

Corporation's assets and liabilities; and (c) such other and further relief as the Court deems appropriate.

**COUNT II – PRIMARY LIABILITY FOR MISREPRESENTATIONS AND OMISSIONS IN VIOLATION OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT OF 1934 AND SEC RULE 10b-5(b), AND SECONDARY LIABILITY OF CONTROLLING PERSONS UNDER SECTION 20(a) OF THE ACT**

**(AGAINST HAF CORPORATION, FOOTE, IORLANO, AND DEBOER)**

105.    Plaintiff incorporates the prior and ensuing allegations as if set forth in their entirety herein.

106.    The Note is a "security" as that term is defined in the Securities Exchange Act of 1934.

107.    Foote and Iorlano, in their capacities as Directors and Officers of HAF Corporation, had ultimate authority over the contents of the POM and the March 24, 2022 letter.

108.    HAF Corporation, Foote, and Iorlano made, and had ultimate authority for, the misstatements described *supra* in the POM and in the May 24, 2022 letter.

109.    HAF Corporation, Foote, and Iorlano omitted to disclose the true facts and circumstances surrounding the matters that were misrepresented in the POM and the May 24, 2022 letter, including but not limited to, the following:

a.    The fact that HAF Corporation does not own the HBOX and related intellectual property and has no rights to license it or derive royalties from it;

b.     The fact that HAF Industries claimed ownership of the HBOX and related intellectual property;

c.     The fact that HAF Corporation had never hired patent counsel and had no existing or prospective patents;

d.     The fact that HAF Corporation would not be using the first proceeds of its "Round B" investment offering to procure patents for the company; and

e.     The fact that HAF Corporation intended to use proceeds from the "Round B" investment offering in a manner that was inconsistent with the representations made in the POM, including, but not limited to, paying legal fees for HAF Industries and paying Mr. Foote's "personal payroll" to compensate him for the time he claims he spent over two decades developing the HBOX technology.

110.   The facts that HAF Corporation, Foote, and Iorlano misstated, and that HAF Corporation, Foote, and Iorlano omitted to state, were material to Plaintiff and would be material to any reasonable investor.

111.   The misstatements and omissions of HAF Corporation, Foote, and Iorlano were intended to mislead Plaintiff, and did in fact mislead Plaintiff, to believe that (a) HAF Corporation owned or had exclusively licensed valuable intellectual property, including patents; and (b) HAF Corporation had taken steps to monetize its intellectual property, and, with its "Round B" funding, would continue to take such steps.

COMPLAINT FOR DAMAGES AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

112.   Plaintiff relied on the misstatements and omissions of HAF Corporation, Foote, and Iorlano by investing in HAF Corporation when she otherwise would not have done so, and such reliance was reasonable and justifiable.

113.   The misstatements and omissions of Foote and Iorlano were the product of scienter (i.e. a mental state embracing intent to deceive, manipulate, or defraud, or deliberate recklessness), which is imputed to HAF Corporation, as evidenced by the following:

a.   Foote has confirmed in text messages sent to Vander Ark that both him and Iorlano were directly and substantially involved in preparing HAF Corporation's investment offering documents;

b.   DeBoer has confirmed in writing that Iorlano was directly and substantially involved in preparing HAF Corporation's investment offering documents;

c.   In a Zoom conference that took place in March 2023, Heckenberg confirmed that Foote retained Venable as patent counsel for HAF Industries, not HAF Corporation, so Foote clearly knew that the statements in the POM and in his May 24, 2022 email that HAF Corporation had retained Venable as its patent counsel and had been working on securing "additional" patents for 12 months were false and misleading;

d.   Foote purports to be the inventor of the HBOX technology, which he describes as his "life's work," and at all relevant times, he was the sole owner and a Director of HAF Industries, all of which gives rise to at least a strong inference that Foote knew that HAF Industries owned the HBOX intellectual property, or claimed to own the

intellectual property, when the POM stating otherwise was published and provided to Plaintiff;

e.   At various times during April and May 2023, including in text messages sent to Vander Ark on April 24, 2023, Foote admitted that HAF Industries was established to be "[t]he holding company of all [his] work," including the HBOX intellectual property, which gives rise to at least a strong inference that he knew HAF Industries owned the HBOX intellectual property, or claimed to own the intellectual property, when the POM stating otherwise was published and provided to Plaintiff;

f.   Foote has an obvious financial incentive to (i) concentrate the valuable HBOX intellectual property in HAF Industries, which he solely owns; (ii) use capital raised through HAF Corporation, a shell company, to further develop and protect HAF Industries' intellectual property; and (iii) require HAF Corporation to pay HAF Industries a licensing fee to use the HBOX technology;

g.   In various text messages and emails sent to Vander Ark in April and May 2023, Foote claimed that Iorlano doctored the POM prior to mailing it to Plaintiff in order to create the pretense that HAF Corporation owned the HBOX intellectual property; however, Iorlano denies the same and the claim is otherwise highly dubious because (i) the references to HAF Corporation's ownership in the POM are so pervasive that it seems unlikely the POM was doctored; (ii) there is a document appearing to be a letter or press release incorporated into the POM which is signed by Foote and which makes the same false and misleading representations regarding HAF Corporation's ownership of the

HBOX intellectual property; (iii) Foote made similar false and misleading representations in the March 24, 2022 email he sent to Vander Ark; (iv) Iorlano has invested substantial funds in HAF Corporation, and presumably he would not have invested in the company if he had known it was an empty shell; (v) subsequent to Iorlano being frozen out of the company's day-to-day operations by Foote in or around October 2022, HAF Corporation has continued to publish documents, including HBOX production reports, which indicate that the HBOX technology is proprietary to HAF Corporation; and (vi) subsequent to Iorlano being frozen out of the company's day-to-day operations by Foote in or around October 2022, HAF Corporation has continued to publish content on its website claiming that the HBOX technology is proprietary to HAF Corporation, including, among other statements on the company's website as of the date of filing of this complaint, the statement that "HAF Corporation is pioneering the future of energy with its Wireless Power Technology, providing clean, renewable energy solutions to empower humanity";

h.    Iorlano was one of two directors at the company, and was primarily responsible for preparing and distributing the company's investment offering documents, including the POM, yet recklessly represented therein, without knowledge of the truth or falsity of the representations, that HAF Corporation owned the HBOX and related technology; and

i.    Foote has represented to Vander Ark that Iorlano was aware of the truth with regard to ownership of the HBOX technology and the prospective licensing

arrangement between HAF Industries and HAF Corporation at the time the POM was provided to Plaintiff.

114.   Plaintiff relied on the misstatements and misleading omissions of HAF Corporation, Foote, and Iorlano by investing $4 million of the Trust's funds in HAF Corporation in exchange for the Note when she otherwise would not have done so had the true facts been known to her, and such reliance on those misstatements and misleading omissions was reasonable and justifiable.

115.   Plaintiff's reliance on the misstatements and misleading omissions was the cause of her investment and loss, which includes purchasing an overpriced, and potentially worthless, investment in convertible debt issued by a shell company that has (a) higher credit and liquidity risk, and a lower book value, than it would have if the company did in fact own the HBOX and related technology; (b) lower revenue- and profit-generating potential than it would have if the company did in fact own the HBOX and related technology; (c) an insufficient coupon rate to compensate for the true risk associated with the investment; and (d) a devalued conversion option.

116.   If Foote and Iorlano are found not to be a primary violators of Section 10(b) of the Exchange Act of 1934 for purposes of this Count, then, as the only directors of the company during the relevant time period, and as principal executive officers of the company who directly communicated with potential investors, who prepared investment offering documents and provided them to potential investors, who had unfettered access to information about the company's core operations, and who had actual knowledge of

the company's core operations, Foote and Iorlano are controlling persons of the company who are subject to secondary liability under Section 20(a) of the Securities Exchange Act of 1934.

117. As a principal executive officer of HAF Corporation during the relevant time period who directly communicated with potential investors, who provided investment documents to potential investors, who had unfettered access to information about the company's core operations, and who had actual knowledge of the company's core operations, DeBoer was also a controlling person of the company during the relevant time period and is therefore subject to secondary liability under Section 20(a) of the Securities Exchange Act of 1934.

WHEREFORE, Plaintiff respectfully requests (a) a joint-and-several money judgment in favor of Plaintiff and against HAF Corporation, Foote, Iorlano, and DeBoer, in an amount that includes Plaintiff's $4 million principal investment, interest from the date of the investment, and attorney fees and costs incurred to bring this action; (b) punitive and/or exemplary damages against HAF Corporation, Foote, Iorlano, and DeBoer; and (c) such other and further relief as the Court deems appropriate.

**COUNT III – PRIMARY LIABILITY FOR MISREPRESENTATIONS AND OMISSIONS IN VIOLATION OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT OF 1934 AND SEC RULE 10b-5(b)**

**(AGAINST VENABLE)**

118. Plaintiff incorporates the prior and ensuing allegations as if set forth in their entirety herein.

119.    Heckenberg, in his capacity as an agent of Venable, had ultimate authority over the contents of his December 21, 2021 letter.

120.    Heckenberg, as an agent of Venable acting within the scope of his agency, made, and had ultimate authority for, the misstatements described *supra* in the December 21, 2021 letter.

121.    Heckenberg, in his capacity as an agent of Venable, omitted to disclose the true facts and circumstances surrounding the matters that were misrepresented in the December 21, 2021 letter, including but not limited to, the following:

a.    The fact that Venable had no knowledge as to whether or not HAF Corporation owned any intellectual property, and made no attempt to find out;

b.    The fact that HAF Corporation had never hired Venable as its patent counsel and had no existing, pending, or prospective patents or patent licenses; and

c.    The fact that HAF Industries was the sole owner of the HBOX and related intellectual property that Heckenberg had discussed with Foote.

122.    The facts that Venable misstated and omitted to state were material to Plaintiff and would be material to any reasonable investor.

123.    The misstatements and omissions of Venable were intended to mislead Plaintiff, and did in fact mislead Plaintiff, to believe that Venable was patent counsel for HAF Corporation and that the company owned or exclusively licensed valuable patented or patentable intellectual property.

124.    Plaintiff relied on the misstatements and omissions of Venable by investing in HAF Corporation, and such reliance was reasonable and justifiable.

125.    The misstatements and omissions were the product of Heckenberg's scienter (i.e., a mental state embracing intent to deceive, manipulate, or defraud, or deliberate recklessness), which is imputed to Venable, as evidenced by the following:

        a.      The December 21, 2021 letter was addressed "To Whom it May Concern" and the content of the letter appears aimed at prospective investors, which gives rise to at least a strong inference that Venable knew that the letter would be included in HAF Corporation's offering documents or otherwise used to solicit investors for HAF Corporation;

        b.      Heckenberg was Foote's primary point of contact at Venable and knew that Venable had not been engaged as patent counsel for HAF Corporation at the time he signed the December 21, 2021 letter; and

        c.      As its patent counsel, Heckenberg knew that HAF Industries, and HAF Industries alone, was in the process of seeking patents for all of the intellectual property that he described in the letter as "HAF Industries' and HAF Corporation's Intellectual Property."

126.    Plaintiff relied on the misstatements and misleading omissions of Venable by investing $4 million of the Trust's funds in HAF Corporation in exchange for the Note when she otherwise would not have done so had the true facts been known, and such reliance was reasonable and justifiable.

127.     Plaintiff's reliance on Venable's misstatements and misleading omissions are the cause of her investment and her loss, which includes purchasing an overpriced, and potentially worthless, investment in convertible debt issued by a shell company that has (a) higher credit and liquidity risk, and a lower book value, than it would have if the company did in fact own the HBOX and related technology; (b) lower revenue- and profit-generating potential than it would have if the company did in fact own the HBOX and related technology; (c) an insufficient coupon rate to compensate for the true risk associated with the investment; and (d) a devalued conversion option.

WHEREFORE, Plaintiff respectfully requests (a) a money judgment in favor of Plaintiff and against Venable, in an amount that includes Plaintiff's $4 million principal investment, interest from the date of the investment, and attorney fees and costs incurred to bring this action; (b) punitive and/or exemplary damages against Venable; and (c) such other and further relief as the Court deems appropriate.

**COUNT IV – PRIMARY LIABILITY FOR FRAUDULENT SCHEME IN VIOLATION OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT OF 1934 AND SEC RULE 10b-5(a) AND (c) AND SECONDARY LIABILITY OF CONTROLLING PERSONS UNDER SECTION 20(a) OF THE ACT**

**(AGAINST HAF CORPORATION, HAF INDUSTRIES, FOOTE, IORLANO, DEBOER, AND VENABLE)**

128.     Plaintiff incorporates the prior and ensuing allegations as if set forth in their entirety herein.

129.    Defendants HAF Corporation, HAF Industries, Foote, Iorlano, and Venable (the "**Scheme Defendants**") participated in a scheme to defraud and deceive prospective HAF Corporation investors, including Plaintiff.

130.    The principal purpose and effect of the fraudulent scheme perpetrated by the Scheme Defendants was to deceive prospective investors, including Plaintiff, into believing that HAF Corporation owned valuable intellectual property, when in fact HAF Industries owned the intellectual property, so that the prospective investors would invest money in HAF Corporation that would then be used to develop HAF Industries' intellectual property.

131.    The Scheme Defendants participated in the scheme with knowledge that HAF Corporation was an empty-shell company, with intent to deceive prospective investors, including Plaintiff, and with knowledge and intent that the investment proceeds would be used to develop and patent HAF Industries' intellectual property, rather than any intellectual property belonging to HAF Corporation.

132.    Defendants HAF Corporation, Foote, and Iorlano participated in the scheme to defraud Plaintiff through their misstatements and omissions described *supra*, and by causing HAF Corporation's "Round B" investment proceeds to be transferred to HAF Industries, and/or causing the proceeds to be used for the primary benefit of HAF Industries and its owner, Foote.

133.    Defendant Venable participated in the scheme to defraud Plaintiff through its misstatements and omissions described *supra*.

134.   HAF Industries participated in the scheme to defraud Plaintiff by (a) supplying HAF Corporation with proprietary, confidential, and attorney-client privileged information regarding the HBOX and related technology so that HAF Corporation could use the information in its offering documents and create the false appearance that HAF Corporation owned the intellectual property; and (b) accepting the proceeds of HAF Corporation's "Round B" investment offering, or benefits derived from such proceeds, without giving any, or adequate, consideration in exchange.

135.   HAF Industries participated in the scheme with scienter, imputed from Foote, because (a) the only plausible reason Foote shared HAF Industries' proprietary, confidential and attorney-client privileged information with HAF Corporation was so that HAF Corporation could use the information in its offering documents in order to create the false appearance that HAF Corporation owned HAF Industries' valuable intellectual property; and (b) as the sole shareholder of HAF Industries, Foote stood to benefit from the scheme because the proceeds of HAF Corporation's investment offering could be used to develop and patent HAF Industries' intellectual property without HAF Industries having to give up any interest in, or rights to, its intellectual property in exchange.

136.   Plaintiff relied on the false appearance that was created in HAF Corporation's offering documents that HAF Corporation owned the HBOX and related intellectual property by investing in HAF Corporation when she otherwise would not have done so had the true facts been known, and such reliance was reasonable and justifiable.

COMPLAINT FOR DAMAGES AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

137.  Plaintiff's reliance on the fraudulent scheme perpetrated by the Scheme Defendants was the cause of her investment and her loss, which includes purchasing an overpriced, and potentially worthless, investment in convertible debt issued by a shell company that has (a) higher credit and liquidity risk, and a lower book value, than it would have if the company did in fact own the HBOX and related technology; (b) lower revenue- and profit-generating potential than it would have if the company did in fact own the HBOX and related technology; (c) an insufficient coupon rate to compensate for the true risk associated with the investment; and (d) a devalued conversion option.

138.  If Foote is found not to be a primary violator of Section 10(b) of the Exchange Act of 1934 for purposes of this Count, then, as a Director of HAF Corporation and HAF Industries during the relevant time period, and as a principal executive officer of both companies who directly communicated with potential investors, who prepared investment offering documents and provided them to potential investors, who had unfettered access to information about the companies' core operations, and who had actual knowledge of the companies' core operations, Foote is a controlling person of the companies who is subject to secondary liability under Section 20(a) of the Securities Exchange Act of 1934.

139.  If Iorlano is found not to be a primary violator of Section 10(b) of the Exchange Act of 1934 for purposes of this Count, then, as a Director of HAF Corporation during the relevant time period, and as a principal executive officer of the company who directly communicated with potential investors, who prepared investment offering

documents and provided them to potential investors, who had unfettered access to information about the company's core operations, and who had actual knowledge of the company's core operations, Iorlano is a controlling person of the company who is subject to secondary liability under Section 20(a) of the Securities Exchange Act of 1934.

140.    As a principal executive officer of HAF Corporation during the relevant time period who managed the company's day-to-day operations, directly communicated with potential investors, provided investment documents to potential investors, had unfettered access to information about the company's core operations, and had actual knowledge of the company's core operations, DeBoer was also a controlling person of the company during the relevant time period and is therefore subject to secondary liability under Section 20(a) of the Securities Exchange Act of 1934.

WHEREFORE, Plaintiff respectfully requests (a) a joint-and-several money judgment in favor of Plaintiff and against HAF Corporation, HAF Industries, Foote, Iorlano, DeBoer, and Venable in an amount that includes Plaintiff's $4 million principal investment, interest from the date of the investment, and attorney fees and costs incurred to bring this action; (b) punitive and/or exemplary damages against said Defendants; and (c) such other and further relief as the Court deems appropriate.

## COUNT V – PRIMARY LIABILITY FOR MISREPRESENTATIONS AND OMISSIONS IN VIOLATION OF THE FLORIDA SECURITIES AND INVESTOR PROTECTION ACT, AND SECONDARY LIABILITY THEREUNDER

## (AGAINST HAF CORPORATION, FOOTE, AND IORLANO)

141.    Plaintiff incorporates the prior and ensuing allegations as if set forth in their entirety herein.

142.    The Note is a "security" and an "investment" as those term are defined in the Florida Securities and Investor Protection Act, Fla. Stat. § 517.011, *et seq*.

143.    Based on the facts described *supra*, HAF Corporation violated Fla. Stat. § 517.301 and Fla. Stat. § 517.312 in connection with its sale of the Note to Plaintiff in the following ways:

a.    Knowingly and willfully falsifying, concealing, and covering up, by way of trick, scheme, or device, material facts so as to deceive Plaintiff;

b.    Making false, fictitious, or fraudulent statements to Plaintiff, and providing Plaintiff with false writings or documents, knowing the same to contain false, fictitious, or fraudulent statements; and

c.    Obtaining money from Plaintiff by means of untrue statements of material facts, and through omissions of material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

144.   HAF Corporation's misstatements and misleading omissions in connection with the sale of the Note to Plaintiff, as described *supra,* were the product of negligence and/or Foote's and Iorlano's scienter, which is imputed to HAF Corporation.

145.   The facts that HAF Corporation misstated and omitted to state in connection with its sale of the Note to Plaintiff were material to Plaintiff and would be material to any reasonable investor.

146.   The misstatements and omissions of HAF Corporation were intended to deceive and mislead Plaintiff, and did in fact deceive and mislead Plaintiff, into believing that (a) HAF Corporation exclusively and indisputably owned valuable intellectual property, including patents; and (b) HAF Corporation had taken steps to monetize its intellectual property, and, with its "Round B" funding, would continue to take such steps.

147.   Plaintiff relied on the misstatements and misleading omissions of HAF Corporation by investing $4 million of the Trust's funds in HAF Corporation in exchange for the Note.

148.   Plaintiff's reliance on the misstatements and omissions of HAF Corporation was reasonable and justifiable.

149.   Plaintiff's reliance on the misstatements and misleading omissions are the cause in-fact and proximate cause of Plaintiff's injuries, which include purchasing an overpriced, and potentially worthless, investment in convertible debt issued by a shell company that has (a) higher credit and liquidity risk, and a lower book value, than it would have if the company did in fact own the HBOX and related technology; (b) lower revenue-

and profit-generating potential than it would have if the company did in fact own the HBOX and related technology; (c) an insufficient coupon rate to compensate for the true risk associated with the investment; and (d) a devalued conversion option.

150.     As described *supra*, during the relevant time period, Foote was a Director, Officer, controlling person, and agent of HAF Corporation, and he personally participated in and aided the sale of the Note to Plaintiff through his solicitation, misrepresentations, and misleading omissions.

151.     As described *supra*, during the relevant time period, Iorlano was a Director, Officer, controlling person, and agent of HAF Corporation, and he personally participated in and aided the sale of the Note to Plaintiff through his solicitation, misrepresentations, and misleading omissions.

152.     Under Fla. Stat. § 517.211, upon tender of the security or investment, the Trust is entitled to recover from HAF Corporation, and every director, officer, partner, or agent of HAF Corporation that personally participated or aided in making the sale of the Note to Plaintiff, including therefore Foote and Iorlano, a joint-and-several money judgment in the combined amount of the $4 million consideration paid for the Note, interest at the legal rate, and reasonable attorney fees.

WHEREFORE, Plaintiff respectfully requests (a) a money judgment in her favor and against HAF Corporation, Foote, and Iorlano, jointly and severally, in an amount that includes Plaintiff's $4 million principal investment, interest from the date of the investment, and attorney fees and costs incurred to bring this action; (b) punitive and/or

exemplary damages against said Defendants; and (c) such other and further relief as the Court deems appropriate.

## COUNT VI – PRIMARY LIABILITY FOR MISREPRESENTATIONS AND OMISSIONS IN VIOLATION OF THE CALIFORNIA CORPORATE SECURITIES LAW OF 1968, AND SECONDARY LIABILITY THEREUNDER

### (AGAINST HAF CORPORATION, HAF INDUSTRIES, VENABLE AND SPECIFIED INDIVIDUAL DEFENDANTS)

153.    Plaintiff incorporates the prior and ensuing allegations as if set forth in their entirety herein.

154.    The Note is a "security" as that term is defined in California's Corporate Securities Law of 1968, Cal. Corp. Code § 25000, *et seq*.

155.    HAF Corporation violated Cal. Corp. Code §§ 25401 and 25501 by selling the Note to Plaintiff by means of the untrue statements of material facts described *supra*.

156.     HAF Corporation violated  Cal. Corp. Code §§ 25401 and 25501 by selling the Note to Plaintiff by creating false appearances through omissions of material facts, the disclosure of which facts was necessary in order to make the statements made by HAF Corporation, in the light of the circumstances under which they were made, not misleading.

157.    HAF Corporation's misstatements and misleading omissions in connection with the sale of the Note to Plaintiff, as described *supra,* were the product of Foote's and Iorlano's scienter, which is imputed to HAF Corporation.

158.    The facts that HAF Corporation misstated and omitted to state in connection with its sale of the Note to Plaintiff were material to Plaintiff and would be material to any reasonable investor.

159.    The misstatements and misleading omissions of HAF Corporation were intended to mislead and deceive Plaintiff, and did in fact mislead and deceive Plaintiff, into believing that (a) HAF Corporation exclusively and indisputably owned valuable intellectual property, including patents; and (b) HAF Corporation had taken steps to monetize its intellectual property, and, with its "Round B" funding, would continue to take such steps.

160.    Plaintiff relied on the misstatements and misleading omissions of HAF Corporation by investing $4 million of the Trust's funds in HAF Corporation in exchange for the Note when she otherwise would not have done.

161.    Plaintiff's reliance on the fraudulent and deceitful misstatements and omissions of HAF Corporation was reasonable and justifiable.

162.    Plaintiff's reliance on the misstatements and misleading omissions was the cause of her investment and loss, which includes purchasing an overpriced, and potentially worthless, investment in convertible debt issued by a shell company that has (a) higher credit and liquidity risk, and a lower book value, than it would have if the company did in fact own the HBOX and related technology; (b) lower revenue- and profit-generating potential than it would have if the company did in fact own the HBOX and

related technology; (c) an insufficient coupon rate to compensate for the true risk associated with the investment; and (d) a devalued conversion option.

163.    At all times relevant to this Count, Foote was a Director, Officer, and agent of HAF Corporation who directly and indirectly controlled the company.

164.    At all times relevant to this Count, Iorlano was a Director and the VP of Business Development at HAF Corporation.

165.    At all times relevant to this Count, DeBoer, Hansen, Graven, El Baroudy, and MacDonald were principal executive officers of HAF Corporation or occupied a similar status or performed similar functions at the company.

166.    Under  Cal. Corp. Code §§ 25501 and 25504, upon tender of the Note, the Trust is entitled to recover from HAF Corporation, every Director and controlling person of the company, and every principal executive officer or person occupying a similar status or performing similar functions, including therefore Foote, Iorlano, DeBoer, Hansen, Graven, El Baroudy, and MacDonald, a joint-and-several money judgment in the combined amount of the $4 million consideration paid for the Note, interest at the legal rate, and reasonable attorney fees and costs.

167.    Based on the facts described *supra*, HAF Industries and Venable materially aided HAF Corporation's violation of Cal. Corp. Code §§ 25401 and 25501 with intent to deceive or defraud Plaintiff, and are therefore jointly and severally liable to Plaintiff under Cal. Corp. Code § 25504.1.

COMPLAINT FOR DAMAGES AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

WHEREFORE, Plaintiff respectfully requests (a) a money judgment in her favor and against HAF Corporation, HAF Industries, Foote, Iorlano, DeBoer, Hansen, Graven, El Baroudy, MacDonald, and Venable, jointly and severally, in an amount that includes her $4 million principal investment, interest from the date of the investment, and reasonable attorney fees and costs incurred to bring this action; (b) punitive and/or exemplary damages against said Defendants; and (c) such other and further relief as the Court deems appropriate.

## COUNT VII – PRIMARY LIABILITY FOR PROFESSIONAL MISREPRESENTATIONS AND OMISSIONS IN VIOLATIONS OF THE CALIFORNIA CORPORATE SECURITIES LAW OF 1968

### (AGAINST VENABLE)

168.   Plaintiff incorporates the prior and ensuing allegations as if set forth in their entirety herein.

169.   Venable prepared the December 21, 2021 letter signed by its agent Heckenberg that was incorporated into the POM.

170.   Venable gave written consent to be named, and was named, in the POM.

171.   The December 21, 2021 letter includes the untrue statements of material fact described *supra*.

172.   Venable is responsible for the material omissions from its December 21, 2021 letter described *supra*, and the omitted information was necessary in order to make

the statements made in the letter, in light of the circumstances under which they were made, not misleading.

173.   As attorneys, Venable's professional standing gave authority to its misstatements and to the false impressions created by its misleading omissions.

174.   Plaintiff acquired the Note in reliance on (a) the untrue statements in the December 21, 2021 letter; and (b) the misleading omissions therefrom.

175.   Based on the foregoing, Venable violated Cal. Corp. Code § 25504.2, and is therefore jointly and severally liable with the Defendants who have violated Cal. Corp. Code § 25501.

WHEREFORE, Plaintiff respectfully requests (a) a money judgment holding Venable jointly and severally liable with the Defendants liable under Cal. Corp. Code§ 25501 in an amount that includes her $4 million principal investment, interest from the date of the investment, and reasonable attorney fees and costs incurred to bring this action; (b) punitive and/or exemplary damages; and (c) such other and further relief as the Court deems appropriate.

## COUNT VIII – BREACH OF DIRECTORS' AND OFFICERS' FIDUCIARY DUTIES AND AIDING AND ABETTING SAME

## (DIRECT AND DERIVATIVE CLAIMS AGAINST HAF INDUSTRIES AND SPECIFIED INDIVIDUALS)

176.   Plaintiff incorporates the prior and ensuing allegations as if set forth in their entirety herein.

177.   The current Directors and Officers of HAF Corporation, who have been on the Board of Directors and/or been Officers since at least October 2022, are Foote, Iorlano, MacDonald, DeBoer, Reinard, Oosting, Johnson, and Musgrave.

178.   Upon information (supplied by Foote, Iorlano, and MacDonald) and belief, HAF Corporation is insolvent because its debts exceed its assets and it cannot pay its debts as they become due, including the debt that is currently due and owing under the Note.

179.   As a result of HAF Corporation's insolvent or near insolvent status, and the fraudulent and unlawful diversion and dissipation of company assets, the current Directors and Officers of HAF Corporation owe the company's creditors, including Plaintiff, fiduciary duties of care, loyalty, diligence, good faith, attentiveness, and impartiality.

180.   The current Directors and Officers have breached one or more of their duties of care, loyalty, diligence, good faith, attentiveness, and impartiality as a result of the following:

a.   Diverting, dissipating, and unduly risking corporate assets that might otherwise be used to pay creditors' claims, for the benefit of corporate insiders and/or preferred creditors including but not limited to Foote and HAF Industries;

b.   Participating in, and/or failing to detect, prevent, disclose, or stop the fraudulent and unlawful diversion and dissipation of corporate assets, including to and for

the benefit of HAF Industries and Foote, and to the detriment of HAF Corporation and it

creditors;

        c.    Disregarding and failing to disclose conflicts of interest surrounding

Foote and HAF Industries, and/or serving the interests of Foote and HAF Industries to the

detriment of HAF Corporation;

        d.    Participating in, covering up, and/or failing to report financial and

operational misconduct and irregularities, including the destruction, fabrication, and

manipulation of financial and operational records, in order to mislead investors;

        e.    Failing to provide required financial and operational disclosures;

        f.    Failing to reasonably and carefully oversee HAF Corporation's

operations and expenditures.

181.    The breaches described herein have directly and proximately caused Plaintiff

and HAF Corporation to sustain injuries, including the waste and depletion of HAF

Corporation's assets, which has devalued Plaintiff's conversion option, and which has

caused HAF Corporation to be unable to pay its debt under the Note, which is immediately

due and payable.

182.    HAF Industries has aided and abetted the breaches of fiduciary duty by

knowingly accepting the proceeds of HAF Corporation's "Round B" investment offering,

or the benefits derived from such proceeds, without giving any, or adequate, consideration

in exchange.

WHEREFORE, Plaintiff respectfully requests (a) a money judgment in her favor and against HAF Industries, Foote, Iorlano, DeBoer, El Baroudy, MacDonald, Musgrave, Oosting, Johnson, and Reinard, jointly and severally, in an amount that includes the Trust's $4 million principal investment, interest from the date of the investment, and reasonable attorney fees and costs incurred to bring this action; (b) punitive and/or exemplary damages against said Defendants; and (c) such other and further relief as the Court deems appropriate.

## COUNT IX – FRAUD AND DECEIT IN VIOLATION OF COMMON LAW AND CAL CIVIL CODE §§ 1709 AND 1710, CIVIL CONSPIRACY, AND AIDING AND ABETTING

## (AGAINST HAF CORPORATION, HAF INDUSTRIES, VENABLE, AND FOOTE)

183.    Plaintiff incorporates the prior and ensuing allegations as if set forth in their entirety herein.

184.    HAF Corporation, Foote, and Venable made the false statements of material fact attributed to them *supra*.

185.    HAF Corporation, Foote, and Venable created false impressions on the part of Plaintiff through the misleading omissions of material fact attributed to them *supra*.

186.    HAF Corporation, Foote, and Venable had fiduciary, common-law, and/or statutory duties to disclose the material facts that they concealed from Plaintiff.

187.   HAF Corporation, Foote, and Venable had a common-law duty to disclose the material facts they concealed because the facts were necessary so that their affirmative statements would not be false and misleading.

188.   HAF Corporation, Foote, and Venable knew the statements at issue were false when they were made and knew the omissions at issue would create false impressions on the part of Plaintiff.

189.   Plaintiff did not know the truth of the matters that were misrepresented and concealed by HAF Corporation, Foote, and Venable.

190.   The misstatements and omissions at issue were the result of HAF Corporation's, Foote's, and Venable's intent to defraud and induce Plaintiff into relying on the same by purchasing the Note.

191.   Plaintiff relied on the false statements and misleading omissions at issue, and the false impressions created by the misleading omissions, by purchasing the Note, which she otherwise would not have done, and such reliance was reasonable and justifiable.

192.   Plaintiff suffered damages as a direct and proximate result of her reliance on the false statements and misleading omissions at issue, as described *supra*.

193.   HAF Industries aided and abetted the fraud described herein, and conspired with HAF Corporation, Foote, and Venable to perpetrate the fraud described herein and to achieve the conspirators' common purpose of unjustly enriching HAF Industries.

COMPLAINT FOR DAMAGES AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

194.    The conspirators each had actual knowledge of the plan to defraud Plaintiff and of the unlawful purpose of the plan (i.e. to unjustly enriching HAF Industries), each concurred in and agreed to the fraudulent scheme, each shared the common purpose, each intended that the fraudulent scheme be perpetrated, and each took actions in furtherance of, and that materially aided and abetted, the scheme and conspiracy.

195.    Certain acts that Foote took in furtherance of the scheme may be imputed to HAF industries in order to establish the company aided and abetted the scheme and acted in furtherance of the conspiracy, including but not limited to (a) the sharing of confidential, proprietary, and attorney-client privileged information about the HBOX and related technology with HAF Corporation so that the same could be used in the POM to create the false impression that HAF Corporation owned the HBOX and related technology; and (b) recruiting HAF Industries' patent attorney to make statements in support of the investment offering that suggested he represented HAF Corporation.

196.    HAF Industries aided and abetted and acted in furtherance of the fraudulent scheme and conspiracy by accepting and retaining the unjust enrichment that resulted from its receipt of offering proceeds from HAF Corporation's investment offering, or its receipt of benefits derived from such proceeds, without providing corresponding consideration to HAF Corporation.

197.    The fraud described herein that HAF Industries aided and abetted and conspired to commit has directly and proximately caused injury to Plaintiff, as described *supra*.

WHEREFORE, Plaintiff respectfully requests (a) a money judgment in her favor and against HAF Corporation, HAF Industries, Foote, and Venable, jointly and severally, in an amount that includes the Trust's $4 million principal investment, interest from the date of the investment, and reasonable attorney fees and costs incurred to bring this action; (b) punitive and/or exemplary damages against said Defendants; and (c) such other and further relief as the Court deems appropriate.

## COUNT X – NEGLIGENT MISREPRESENTATIONS AND OMISSIONS IN VIOLATION OF COMMON LAW AND CAL. CIVIL CODE §§ 1709 AND 1710

### (AGAINST HAF CORPORATION, FOOTE, IORLANO, AND VENABLE)

198. Plaintiff incorporates the prior and ensuing allegations as if set forth in their entirety herein.

199. HAF Corporation, Foote, Iorlano, and Venable made the misrepresentations of material fact attributed to them *supra*, and are responsible for the misleading omissions of material facts attributed to them *supra*.

200. HAF Corporation, Foote, Iorlano, and Venable made their respective misrepresentations without knowledge of the truth or falsity of the same, or should have known, through the exercise of reasonable care, that their respective representations were false.

201. HAF Corporation, Foote, Iorlano, and Venable either proceeded with reckless disregard of the possibility that their respective omissions would create false

impressions, or should have known, through the exercise of reasonable care, that such outcome would result.

202.   HAF Corporation, Foote, Iorlano, and Venable intended to induce Plaintiff to rely on their respective negligent misrepresentations and the false impressions created by the respective negligent omissions.

203.   Plaintiff relied on the negligent misrepresentations and the false impressions created by the negligent omissions by purchasing the Note, which she otherwise would not have purchased, and Plaintiff's reliance was reasonable and justifiable.

204.   Plaintiff was directly and proximately injured as a result of her reliance on the negligent misrepresentations and the false impressions created by the negligent omissions.

WHEREFORE, Plaintiff respectfully requests (a) a money judgment in her favor and against HAF Corporation, Foote, Iorlano, and Venable, jointly and severally, in an amount that includes the Trust's $4 million principal investment, interest from the date of the investment, and reasonable attorney fees and costs incurred to bring this action; (b) punitive and/or exemplary damages against said Defendants; and (c) such other and further relief as the Court deems appropriate.

## COUNT XI – LEGAL MALPRACTICE

205.   Plaintiff incorporates the prior and ensuing allegations as if set forth in their entirety herein.

206.     Upon information and belief, Dieterich participated in the preparation of the POM, including the misrepresentations quoted *supra*, knowing that the POM was substantially likely to be relied on by prospective investors like Plaintiff.

207.     Dieterich owed Plaintiff a duty under California common law to use such skill, prudence, and diligence in preparation of the POM as members of his or her profession commonly possess and exercise.

208.     Dieterich breached the duty owed to Plaintiff by preparing the misrepresentations in the POM, and by not disclosing the true facts relating to the subjects addressed in the misrepresentations, which Dieterich either knew or should have known.

209.     Dieterich's negligent breaches have directly and proximately caused Plaintiff to suffer damages.

WHEREFORE, Plaintiff respectfully requests (a) a money judgment in her favor and against Dieterich, jointly and severally, in an amount that includes the Trust's $4 million principal investment, interest from the date of the investment, and reasonable attorney fees and costs incurred to bring this action; (b) punitive and/or exemplary damages against said Defendants; and (c) such other and further relief as the Court deems appropriate.

1
2

**COUNT XII – ACTUAL AND CONSTRUCTIVE FRAUDULENT TRANSFERS IN VIOLATION OF CALIFORNIA'S UNIFORM VOIDABLE TRANSFER ACT**

3

**(AGAINST ALL DEFENDANTS EXCEPT DIETERICH)**

4
5

210.    Plaintiff incorporates the prior and ensuing allegations as if set forth in their entirety herein.

6
7

211.    HAF Corporation made the Transfers with actual intent to hinder, delay, or

8

defraud creditors, including Vander Ark, who is by far its largest creditor.

9
10

212.    HAF Corporation did not receive reasonably equivalent value in exchange

11

for the Transfers because the benefit inured to HAF Industries, not HAF Corporation.

12

213.    HAF Corporation made the Transfers while it was engaged in, or was about

13
14

to engage in, a business or a transaction for which its remaining assets were unreasonably

15

small in relation to the business or transaction, as evidenced by the fact that HAF

16

Corporation is almost out of money and has nothing to show for its endeavors.

17

214.    HAF Corporation intended to incur, or believed, or reasonably should have

18
19

believed that it would incur, debts beyond its ability to pay as they became due, including

20

the debt owed to Plaintiff which has been due and payable since May 2022 based on the

21
22

Events of Default described in Count I *supra*.

23

215.    The Transfers occurred shortly after a substantial debt was incurred, namely

24

the debt owed to Plaintiff under the Note.

25
26
27
28

COMPLAINT FOR DAMAGES AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

216.   Some of the Transfers caused HAF Corporation to become insolvent because, at a fair valuation, said Transfers left HAF Corporation with collective debts that were far greater than its collective assets.

217.   Some of the Transfers were made while HAF Corporation was insolvent because at the time of said Transfers the sum of HAF Corporation's debts far exceeded the sum of its assets.

218.   HAF Industries, and the Directors, Officers, and employees of HAF Corporation who received Transfers, did not receive the funds that were transferred in good faith or for value or reasonably equivalent value.

219.   As a direct and proximate result of the Transfers, Plaintiff has been damaged.

220.   Unless the Court immediately enjoins HAF Corporation and HAF Industries from transferring their assets, Plaintiff will suffer irreparable harm because she will not be able to recover the debt owed to her from HAF Corporation or HAF Industries.

221.   The harm that Plaintiff will suffer if the Court does not grant the preliminary and permanent injunctive relief Plaintiff seeks outweighs any harm that the affected Defendants and any other third parties might suffer if the injunctive relief is granted.

222.   The public interest would be advanced if Plaintiff is granted the preliminary and permanent injunctive relief it seeks.

WHEREFORE, Plaintiff requests one or more of the following types of relief authorized under the California Uniform Voidable Transfer Act: (a) temporary and

permanent injunctive relief prohibiting HAF Corporation and HAF Industries from transferring any of their assets; (b) temporary and permanent injunctive relief prohibiting HAF Industries and Foote from transferring any assets received from HAF Corporation; (c) avoidance of all transfers made by HAF Corporation of the Series B proceeds to transferees who did not receive the Transfers in good faith and/or for value, including but not limited to HAF Industries, HAF Corporations' officers and employees, and Venable; (d) pre-judgment attachment of HAF Corporation's and HAF Industries' bank accounts, the HBOX intellectual property, hydrogen generator prototype, and related intellectual property; (e) appointment of a receiver to take charge of the assets transferred, the HBOX and related intellectual property, the HBOX prototype / pre-production model, and other property of the HAF Corporation and the transferee Defendants; (f) an equitable accounting of how her funds have been disposed of and used, and of HAF Corporation's assets and liabilities, (g) a constructive trust; and (h) any other relief the circumstances may require.

## COUNT XIII – TORTIOUS INTERFERENCE WITH CONTRACT
## (AGAINST HAF INDUSTRIES AND FOOTE)

223.    Plaintiff incorporates the prior and ensuing allegations as if set forth in their entirety herein.

224.    The Note is a valid contract between Plaintiff and HAF Corporation.

225.    Foote and HAF Industries had knowledge of the Note and intended to induce the breaches of the Note by HAF Corporation that are described in Count I.

226.    The Note has in fact been breached by HAF Corporation in the manner described in Count I.

227.    The breaches were caused by Foote's and HAF's unjustified or wrongful conduct which had the purpose of causing, and did cause, HAF Corporation to transfer assets to HAF Industries or to third parties for the benefit of HAF Industries, and left HAF Corporation as an empty shell, with virtually no assets or ability to repay the Note.

228.    Plaintiff was damaged as a result of Foote's and HAF Industries' tortious interference with the Note.

WHEREFORE, Plaintiff requests (a) temporary and permanent injunctive relief prohibiting HAF Industries from transferring any of their assets; (b) temporary and permanent injunctive relief prohibiting HAF Industries and Foote from transferring any assets received from HAF Corporation; (c) a money judgment in her favor and against Foote and HAF Industries, jointly and severally, in an amount that includes Plaintiff's $4 million principal investment, interest from the date of the investment, and attorney fees and costs incurred to bring this action and collect on the Note; and (d) such other and further relief as the Court deems appropriate.

COMPLAINT FOR DAMAGES AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

## COUNT XIV – EQUITABLE ACCOUNTING

## (HAF CORPORATION AND HAF INDUSTRIES)

229.    Plaintiff incorporates the prior and ensuing allegations as if set forth in their entirety herein.

230.    Defendants HAF Corporation and HAF Industries have a relationship with Plaintiff that requires an accounting of how Plaintiff's invested funds have been transferred, disposed of, and otherwise used.

231.    Because of the complexity of the required calculations and because it is, or may be, unclear exactly how much of the invested funds have been transferred, disposed of, or otherwise used unlawfully by HAF Corporation and HAF Industries, there is balance due to Plaintiff that can only be ascertained by an accounting.

WHEREFORE, Plaintiffs requests an equitable accounting from HAF Corporation and HAF Industries sufficient to show (a) how her invested funds were transferred, disposed of, or otherwise used, (b) the amount of the funds still remaining in said Defendants' possession, custody or control; and (c) said Defendants' assets, liabilities, cashflows, income, expenses, and other financial activity.

## COUNT XV – CONSTRUCTIVE TRUST

## (HAF CORPORATION AND HAF INDUSTRIES)

232.    Plaintiff incorporates the prior and ensuing allegations as if set forth in their entirety herein.

COMPLAINT FOR DAMAGES AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

233.   HAF Corporation and HAF Industries are in possession of property that they received from Plaintiff, and/or property that is proceeds from the disposition of the property received from Plaintiff, including but not limited portions of the HBOX and related intellectual property, and products derived from such intellectual property, such as its preproduction hydrogen power generator.

234.   HAF Corporation wrongfully acquired the property it received from Plaintiff and is continuing to wrongfully detain the property, as/or the proceeds of such property, and Plaintiff has a right to recover the same.

235.   As a result of their wrongful acquisition and detention of property described herein, HAF Corporation and HAF Industries are involuntary trustees thereof, for the benefit of the Plaintiff.

WHEREFORE, Plaintiff requests that the Court grant a constructive trust over the property that HAF Corporation wrongfully acquired from Plaintiff, and/or the proceeds of such property, order that Plaintiff holds the beneficial interest in such property, and order such other and further relief as is necessary to allow Plaintiff to enjoy its beneficial interest, and/or combine such interest with the legal interest in the property.

## PRAYER FOR RELIEF

Wherefore, considering the foregoing, Plaintiffs pray for:

a.  A judgement in their favor on all counts pleaded;

b.  Temporary, preliminary, and permanent injunctive relief;

c.  Equitable relief as permitted by law, including but not limited to an accounting;

d.  Actual, compensatory, punitive, treble, and special damages, as permitted by law and shown at trial;

e.  Reasonable fees and costs, as permitted by law; and

f.  Any and such further relief as the Court may deem appropriate.

Respectfully submitted,

Dated: June 9, 2023                    PATIL LAW, PC

/s/ *Chetan Patil* (CA Bar 310527)
Chetan S. Patil
7119 W. Sunset Blvd.
Suite 683
Los Angeles, CA 90046
(800) 950-6553
cp@patillaw.com


MIKA MEYERS PLC


/s/ *Daniel J. Broxup*
Daniel J. Broxup (*pro hac forthcoming*)
900 Monroe Avenue, NW
Grand Rapids, MI 49503
(616) 632-8000
dbroxup@mikameyers.com

COMPLAINT FOR DAMAGES AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF